**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| MITITO TWITTY | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs | ) | **Case No.**  0:26cv3194-JDA-TER |
| | ) | |
| ROBIN ANTHONY, d/b/a RENU | ) | |
| HERBS | ) | **COMPLAINT** |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

### I.     INTRODUCTION

1. This is a civil action brought by Mitito Twitty ("Plaintiff"), an individual consumer, against Defendant Robin Anthony, d/b/a Renu Herbs ("Defendant") for violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq.* and the South Carolina Telephone Privacy Protection Act ("SCTPPA") S.C. Code Ann. § 37-21-10 *et seq.*

### II. JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 28 U.S.C. § 1331, 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over state law claims. The Venue in this

District is proper under 28 U.S.C. § 1391(b)(2) as Plaintiff resides in Lancaster, Lancaster County, South Carolina, and the conduct complained of occurred in Lancaster, Lancaster County, South Carolina.

### III.    PARTIES

3. Plaintiff Mitito Twitty (hereinafter "Mr. Twitty") is a natural person and lifelong resident of the state of South Carolina residing in Lancaster, Lancaster County, South Carolina.

4. At all relevant times, Plaintiff's residence has been located in the state of South Carolina.

5. Upon information and belief, Robin Anthony (hereinafter "Defendant") is an individual residing in the state of Texas, doing business as Renu Herbs, with the principal place of business located at 8785 S Gessner Rd, Houston, TX 77074.

6. At all times relevant to the conduct alleged in this Complaint, Defendant Robin Anthony was the founder and operator of Renu Herbs, holding herself out publicly as such on the company's website, in press and social media, and who personally signed a sworn Assumed Name Certificate filed with the Harris County Texas Clerk on September 9, 2019, for a period of ten (10) years through September 9, 2029, identifying herself as the sole owner of the unincorporated business operating under the name "Renu Herbs."

7. Plaintiff's last order placed in or around 2025 for Defendant's products were received bearing the name "Robin Anthony's Renu Herbs" on the bottles, confirming Defendant's continued ownership and operation of the business shortly before the unlawful text messages at issue began in February 2026.

8. Defendant operates a physical storefront and an online commercial retail business website, www.renuherbs.com through which she sells a variety of supplement products.

9. Defendant also sends promotional text messages to consumers in her ordinary course of business. At all material times herein, Defendant sent or caused to be sent promotional text messages to Plaintiff's cellular telephone number ending in 6764 for the purpose of promoting her products and or services.

10. All the text messages were sent by Defendant directly, or through a third party vendor, platform, or marketing service acting on Defendant's behalf and at Defendant's direction.

## PRELIMINARY STATEMENT

11. Plaintiff clearly, explicitly and unambiguously revoked all prior express written consent to receive text messages from Defendant on February 09, 2026 and again on February 16, 2026. In spite of Plaintiff's clear, explicit and unambiguous written revocations that were communicated directly to Defendant via text message reply on both dates, Defendant continued to send nineteen (19) unsolicited commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 between February 16, 2026 and May 25, 2026.

12. Plaintiff's opt out requests also constituted demands to be put on Defendant's internal do-not-call list, which Defendant failed to honor.

13. Each text message Defendant sent or caused to be sent to Plaintiff's cellular telephone number ending in 6764 after receiving Plaintiff's revocation of consent constitutes a separate and independent violation of the TCPA, entitling Plaintiff to statutory damages of five hundred dollars ($500) to one thousand five hundred dollars ($1,500) per violation, and a separate and independent violation of the SCTPPA, entitling Plaintiff to statutory damages of one thousand dollars ($1,000) to five thousand dollars ($5,000) per violation.

14. The TCPA is a remedial statute intended to protect consumers from unwanted communications that are a nuisance and an invasion of privacy. Courts construe it broadly to benefit consumers.

### IV.    FACTUAL ALLEGATIONS

15. Plaintiff is, and has been for the relevant time period, the sole operator, customary user, possessor, and subscriber of the cellular telephone number ending in 6764.

16. At all times relevant, Plaintiff's cellular telephone number ending in 6764 was assigned to a cellular telephone service.

17. Plaintiff uses his cellular telephone number ending in 6764 for personal, residential and non-commercial purposes. It is not used for business or commercial purposes. Plaintiff uses his cellular telephone primarily to communicate with family members, friends, and to schedule personal appointments and for other personal and household purposes. Plaintiff personally pays for his cellular telephone plan and is not reimbursed by any employer or business. At all relevant times, Plaintiff's cellular telephone number ending in 6764 has been Plaintiff's primary personal telephone number and Plaintiff's residence has been located in the state of South Carolina, as Plaintiff is a lifelong resident of the state of South Carolina.

18. Plaintiff uses his cellular telephone number for personal, residential and non-commercial purposes, and at all relevant times, Plaintiff's residence has been located in Lancaster, Lancaster County, South Carolina, as Plaintiff is a lifelong resident of the state of South Carolina. Plaintiff's cellular telephone number ending in 6764 is also registered on the National Do-Not-Call Registry which is only open to residential telephone subscribers.

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 202 (D. Mass. 2021), *adhered to on denial of reconsideration*, 541 F. Supp. 3d 138 (D. Mass. 2021).

19. Plaintiff's cellular telephone number ending in 6764 constitutes a residential telephone number for purposes of the Telephone Consumer Protection Act (TCPA) and the South Carolina Telephone Privacy Protection Act (SCTPPA) S.C. Code Ann. § 37-21-10 *et seq.*, as all text messages at issue were sent to Plaintiff at his South Carolina residence.

20. Federal Courts within the Fourth Circuit have unanimously held that a cellular telephone number used for personal, residential, and non-commercial purposes constitutes a residential telephone number for purposes of § 227(c) and 47 C.F.R. § 64.1200(c). *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513, at *3 (M.D.N.C. Aug. 12, 2024); *Tessu v. AdaptHealth, LLC*, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023); *Davis v. Reliance First Cap., LLC*, 2023 WL 1982354, at *4 n.1 (E.D.N.C. Feb. 13, 2023); *Boardman v. Green Dot Corp.*, 2021 WL 3699856, at *3 (W.D.N.C. Aug. 19, 2021). The FCC regulations expressly state that the DNC rules are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers. 47 C.F.R. § 64.1200(e). The FCC has further recognized that extending TCPA protections to wireless subscribers is more consistent with the overall intent of the TCPA. In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14038-39 (2003). Most recently, a Federal Court in the Fourth Circuit using these same cases denied a motion to dismiss on this issue, finding that a plaintiff who alleged personal and household use of a cellular telephone number sufficiently pleaded residential status to survive dismissal. *McGonigle v. Dickey's Barbecue Restaurants, Inc.*, No. 1:25-cv-01062 (E.D. Va. July 22, 2026).

21. Prior to the events giving rise to this civil action, Plaintiff had made purchases from Defendant's online commercial retail business website which is www.renuherbs.com (Plaintiff's last purchase was made sometime in the year two thousand twenty five (2025) through which Defendant obtained Plaintiff's cellular telephone number. In connection with those transactions, Defendant may have obtained some form of consent to send text messages to Plaintiff's cellular telephone number ending in 6764. The precise scope, nature and legal sufficiency of any such consent, including whether it satisfied the TCPA's prior express written consent requirements under 47 C.F.R. § 64.1200(f)(9) is a matter Plaintiff reserves the right to challenge following discovery into Defendant's checkout process and consent records.

22. Defendant's own Mobile Terms of Service listed on her online commercial retail business website acknowledge that participation in Defendant's SMS program requires users to opt in by "affirmatively opting into the Program, such as through online or application-based enrollment forms," and expressly state that "consent is not required to make any purchase" from Defendant. These admissions by Defendant establish that any consent supposedly obtained from Plaintiff at checkout was subject to meaningful limitations.

23. In any event, any such consent was clearly, unequivocally and explicitly revoked by Plaintiff on February 09, 2026.

24. Regardless of whether Defendant possessed valid prior express written consent to send text messages to Plaintiff's cellular telephone number ending in 6764 at any point, that consent was clearly, explicitly and unequivocally revoked by Plaintiff on February 09, 2026 and then again on February 16, 2026.

6

25. In addition to Plaintiff's TCPA claims, Plaintiff also brings claims under the South Carolina Telephone Privacy Protection Act ("SCTPPA") S.C. Code Ann. § 37-21-10 *et seq.*, which independently prohibits unwanted telephone solicitations directed to a telephone number after a person at that number has stated a desire not to be contacted, and prohibits telephone solicitations outside the hours of 8:00 a.m. to 9:00 p.m. local time.

26. Since Plaintiff has at all relevant times been a resident of the state of South Carolina, and is a lifelong resident of the state of South Carolina, each text message sent by Defendant or caused to be sent by Defendant, to Plaintiff's cellular telephone number ending in 6764 constitutes a telephone solicitation directed to a natural person's residence in the State within the meaning of S.C. Code Ann. § 37-21-20(6). Plaintiff's SCTPPA claims are brought in addition to, and not in lieu of, Plaintiff's Federal TCPA claims.

27. Any conduct by Plaintiff after the receipt of Defendant's unwanted text messages to Plaintiff's cellular telephone number ending in 6764, including any visit to Defendant's website or review of Defendant's promotional content, is irrelevant to the claims herein and does not constitute consent or invitation to receive further commercial/promotional text messages. A Court in the Fourth Circuit has held that post-violation conduct by a Plaintiff is irrelevant for purposes of a motion to dismiss TCPA claims. *Newman v. SGMS, Inc. and DeMayo Law Offices, LLP*, No. 3:25-CV-00042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025).

28. On or about February 09, 2026, Defendant sent a text message to Plaintiff's cellular telephone number ending in 6764 addressing Plaintiff by his first name. Defendant's text message was promoting a flash sale advertising its products.

7

29. Defendant's text message sent to Plaintiff's cellular telephone number ending in 6764 on February 09, 2026, identified the sender of the text message as "Renu Herbs", further establishing that Defendant Robin Anthony operated, controlled, and is responsible for the conduct described herein.

30. On or about February 09, 2026, Plaintiff sent a reply text message back directly to Defendant's promotional text message that stated: "I don't wanna receive any further texts from your company."

31. Plaintiff's reply to Defendant's text message was a clear, reasonable and unambiguous revocation of any prior express written consent under the TCPA and under FCC (Federal Communications Commission) regulations. Under the FCC's rules, all consumers, including Plaintiff, may revoke consent through any reasonable means, and are not required to use any specific opt- out words or phrases to revoke consent.

32. Federal Law does not require a consumer, such as Plaintiff, to use any specific words or phrases to revoke consent to receive text messages on his cellular telephone number ending in 6764.

33. Plaintiff may opt out through any reasonable means that clearly and explicitly expresses his desire not to receive any further text messages. The FCC has expressly confirmed this in its updated rules, which went into effect on April 11, 2025.

34. Defendant was thereby put on notice on February 09, 2026, that Plaintiff revoked consent and demanded that all future text messages cease.

35. On February 09, 2026, Plaintiff's direct text message reply to Defendant stating "I don't wanna receive any further texts from your company" constituted both a revocation of prior express consent and a request to be placed on Defendant's company-specific internal do-

8

not-call list, under both the FCC's general revocation framework and the amended 47 C.F.R. § 64.1200(d)(3), effective April 11, 2025.

36. Defendant was required to honor Plaintiff's opt out request and cease all text messages to Plaintiff's cellular telephone number ending in 6764.

37. Defendant has the ability to immediately comply with Plaintiff's opt-out requests and cease sending text messages to Plaintiff's cellular telephone number ending in 6764.

38. In spite of Plaintiff's explicit and unambiguous revocation, Defendant continued to send commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764. All of the text messages were sent by Defendant directly, or by a third party vendor, platform, or marketing service acting on Defendant's behalf and at Defendant's direction, for the purpose of promoting Defendant's products and driving consumer purchases to Defendant's online commercial retail business website. The text messages were sent to Plaintiff's cellular telephone number ending in 6764 after Defendant received Plaintiff's revocation of consent on February 09, 2026. All such text messages, from February 9, 2026 through May 8, 2026, were sent from telephone number 8774522026.

39. On or about February 16, 2026, seven (7) days after Plaintiff's initial revocation, Defendant sent Plaintiff another promotional text message about one of its products, which also contained a code to use, to Plaintiff's cellular telephone number ending in 6764. Plaintiff replied directly to Defendant's promotional text message with the following: "i don't wanna receive any further texts from your company leave me alone." This constituted a second, independent revocation of consent.

40. On February 16, 2026, Plaintiff's second direct text message reply stating "i don't wanna receive any further texts from your company leave me alone" constituted a second,

9

independent revocation of prior express consent and a second, independent request to be placed on Defendant's internal do-not-call list.

41. Despite receiving two (2) explicit and unambiguous revocations of consent from Plaintiff within seven (7) days of each other, one on February 09, 2026 and another on February 16, 2026, Defendant sent or caused to be sent eighteen (18) additional promotional text messages to Plaintiff's cellular telephone number ending in 6764 between February 17, 2026 and May 25, 2026, bringing the total number of text messages sent to Plaintiff's cellular telephone number ending in 6764 after Plaintiff's initial revocation to nineteen (19).

42. Each of Defendant's text messages identified above was commercial in nature, promoting Defendant's products, Flash sales, Birthday sale, Easter sale or live commercial events and each text message included either a website link, product URL, promotional code, or social media link designed to drive commercial purchases.

43. Defendant's text messages to Plaintiff's cellular telephone number ending in 6764 constitute telephone solicitations within the meaning of 47 C.F.R. § 64.1200(f)(15) because each text message was transmitted for the purpose of encouraging the purchase of Defendant's supplement products.

44. Not one of the text messages sent by Defendant to Plaintiff's cellular telephone number ending in 6764 was made for an emergency purpose. Each text message was commercial in nature, sent for the purpose of promoting and selling Defendant's products.

45. At no time after Plaintiff's two (2) clear and explicit revocations did Defendant honor Plaintiff's opt-out requests or cease sending promotional text messages to Plaintiff's cellular telephone number ending in 6764. As of the date of this Complaint, Defendant's

most recent violation occurred on May 25, 2026, one hundred five (105) days after Plaintiff's initial revocation. Defendant's continued sending of promotional text messages was not the result of any technical limitation, but rather a complete and total disregard of Plaintiff's rights under the TCPA and the SCTPPA.

46. Defendant's Mobile Terms of Service, listed on her online commercial retail business website, as of the date of this Complaint, state '**Last Updated Aug. 30, 2022**,' and further purport to restrict opt-out to only the keyword commands STOP, END, CANCEL, UNSUBSCRIBE, or QUIT, and state that any other method of opting out "is not a reasonable means of opting out." This restriction by Defendant on a consumer's rights, such as Plaintiff, is unlawful and unenforceable. The FCC has expressly held that a sender of commercial text messages may not limit or restrict the manner in which a consumer, such as Plaintiff, may revoke consent, and that consumers, including Plaintiff, may revoke consent through any reasonable means at any time, effective April 11, 2025.

47. The FCC further confirmed that a company may not limit a consumer, such as Plaintiff, to one specific opt-out method or word, and may not block other reasonable means of revoking consent. Consequently, Defendant's STOP, END, CANCEL, UNSUBSCRIBE, or QUIT only opt-out word restrictions are null and void and are preempted by Federal Law.

48. Plaintiff's plain language opt-out replies on February 09, 2026 and on February 16, 2026 constituted legally valid and effective revocations of consent under the TCPA, the SCTPPA, and FCC regulations, in spite of Defendant's unlawful attempt to limit opt-out methods in its Terms of Service.

11

49. On May 25, 2026, Defendant sent a commercial/promotional text message, or caused a commercial/promotional text message to be sent, to Plaintiff's cellular telephone number ending in 6764 from a different telephone number, 8557711275. The commercial/promotional text message advertised Defendant's "Memorial Day 20% OFF Sale," in spite of Plaintiff's prior revocations of consent communicated directly to Defendant on February 09, 2026 and again on February 16, 2026 to Defendant's telephone number at that time which was 8774522026. Plaintiff's revocations of consent were directed at Defendant as the sender of the text messages, not at any particular telephone number used by Defendant to send them. Defendant's use of a different telephone number does not extinguish or limit the legal effect of Plaintiff's prior revocations of consent on February 9, 2026 and again on February 16, 2026.

50. The FCC's regulations implementing the TCPA require any person or entity that initiates calls for telemarketing purposes, including commercial text messages to maintain a written policy, available upon demand, for maintaining a company specific do-not-call list. 47 C.F.R. § 64.1200(d)(1).

51. The FCC's regulations further require that such persons train their personnel engaged in telephone solicitations on the existence and use of the company- specific do-not-call list. 47 C.F.R. § 64.1200(d)(2).

52. When a consumer, such as Plaintiff, requests to be placed on a company- specific do-not-call list, the seller or telemarketer must record the request and honor it within a reasonable time not to exceed ten (10) business days from the date of such request. 47 C.F.R. § 64.1200(d)(3).

53. The FCC's regulations further require that a do-not-call request must be honored for a period of five (5) years from the time the request is made. 47 C.F.R. § 64.1200(d)(6). Plaintiff's opt-out requests of February 9, 2026 and February 16, 2026 must therefore be honored by Defendant through at least February 2031.

54. Upon information and belief, Defendant does not maintain and has not maintained a written policy for maintaining a company-specific internal do- not-call list, in violation of 47 C.F.R. § 64.1200(d)(1). Defendant's failure to honor Plaintiff's repeated clear and explicit do-not-call requests over a period of one hundred five (105) days is consistent with, and is evidence of, the absence of any such written policy.

55. Upon information and belief, Defendant has not informed and has not trained its personnel engaged in telephone solicitations and telemarketing on the existence and use of any company-specific internal do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2). Defendant continued to send commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 following the receipt of two (2) clear and explicit opt-out requests. This behavior is consistent with a failure to train personnel on consumer do-not-call rights and obligations.

56. Upon information and belief, Defendant is not a tax-exempt nonprofit organization, and none of the commercial/promotional text messages sent to Plaintiff's cellular telephone number ending in 6764 were sent by or on behalf of a tax-exempt nonprofit organization. Accordingly, no nonprofit exemption applies to any of the violations alleged herein.

57. On February 9, 2026, Plaintiff's direct text message reply to Defendant stating "I don't wanna receive any further texts from your company" constituted both a revocation of prior express consent and a request to be placed on Defendant's company-specific internal do-

not-call list. Under both the FCC's revocation framework and the amended 47 C.F.R. § 64.1200(d)(3) effective April 11, 2025, Defendant was required to honor Plaintiff's opt-out request and cease all text messages as quickly as realistically possible, but definitely within ten (10) business days of receipt, which would have been no later than February 23, 2026, to be compliant with the TCPA. Defendant's failure to honor either obligation by that date renders every subsequent text message a violation.

58. On February 16, 2026, Plaintiff's second text message reply stating "i don't wanna receive any further texts from your company leave me alone" constituted a second, independent revocation of consent and a second, independent request to be placed on Defendant's internal do-not-call list.

59. Defendant failed to place Plaintiff on its internal do-not-call list within ten (10) business days of Plaintiff's first request no later than February 23, 2026 or at all. Defendant sent or caused to be sent commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 on February 24, 2026, February 28, 2026, March 7, 2026, March 10, 2026, March 13, 2026, March 18, 2026, March 21, 2026, March 22, 2026, March 25, 2026, April 3, 2026, April 5, 2026, April 11, 2026, April 29, 2026, May 4, 2026, May 8, 2026 and May 25, 2026. Every one of these text messages was sent to Plaintiff's cellular telephone number ending in 6764 after the February 23, 2026 compliance deadline had expired.

60. Upon information and belief, Defendant failed to maintain a written internal do-not-call policy as required by 47 C.F.R. § 64.1200(d)(1), and/or failed to train its personnel on any such policy, as evidenced by its repeated failure to honor Plaintiff's multiple clear and explicit do-not-call requests over a period of one hundred five (105) days.

14

61. Upon information and belief, Defendant maintains and has access to outbound transmission reports for all text messages sent promoting its products and services, including reports showing the dates, times, target telephone numbers, and content of each text message sent to Plaintiff's cellular telephone number ending in 6764. Defendant also maintains inbound text message logs showing Plaintiff's opt-out requests and the dates on which those requests were received. These records are directly relevant to the claims herein and will be sought by Plaintiff in discovery.

62. As a direct and proximate result of Defendant's nineteen (19) unwanted commercial/promotional text messages sent to Plaintiff's cellular telephone number ending in 6764 following Plaintiff's two (2) explicit, clear and unambiguous revocations of consent, Plaintiff has suffered actual harm including emotional distress, anger, frustration, mental duress, invasion of privacy, and intrusion upon seclusion.

63. Defendant's unsolicited telemarketing text messages caused Plaintiff actual harm in the form of wasted time and lost productivity. Plaintiff was required to stop his activities on at least nineteen (19) separate occasions to retrieve his cellular telephone and review each of Defendant's unwanted text messages, wasting an estimated twenty (20) to thirty (30) seconds of his time per text message, which is time he will never recover.

64. Defendant's unsolicited text messages caused Plaintiff additional tangible harm, including wear and tear on Plaintiff's cellular telephone hardware, consumption of Plaintiff's phone battery, consumption of memory and storage capacity on Plaintiff's cellular telephone device. Each of Defendant's nineteen (19) unwanted text messages, many of which contained commercial images and website links, contributed to this tangible, physical harm to Plaintiff's personal property.

15

65. Defendant's unsolicited text messages also inconvenienced Plaintiff, disrupted his daily life, and caused ongoing aggravation and annoyance, all as a direct result of Defendant's repeated and willful disregard of Plaintiff's clear and explicit opt-out demands on February 9, 2026 and February 16, 2026.

66. The harm caused by Defendant's March 25, 2026 text message was very severe. The text message was sent to Plaintiff's cellular telephone number ending in 6764 at 5:17 AM, while Plaintiff was asleep. The text message notification sound abruptly woke Plaintiff up. Upon being woken up at that time, Plaintiff's immediate reaction was fear and anxiety, believing the early text message notification signaled an emergency involving a family member, friend, or other urgent matter. Plaintiff's heart started beating faster than normal, causing physical distress. Upon reading the text message and discovering it was a commercial/promotional solicitation from Defendant advertising her supplement products, Plaintiff experienced immediate anger, frustration, and emotional distress. The disruption of Plaintiff's sleep, the physical distress, and the emotional harm caused by Defendant sending this text message to Plaintiff's cellular telephone number ending in 6764 at 5:17 AM are direct and proximate results of Defendant's willful decision to send a commercial/promotional solicitation during the TCPA's prohibited quiet hours.

67. The harms suffered by Plaintiff are concrete and particularized injuries and are the type the TCPA was enacted to prevent and are sufficient to establish Article III standing pursuant to *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016), and *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Federal Courts within the Fourth Circuit have expressly held that receipt of unsolicited text messages including allegations of annoyance, nuisance, invasion of privacy, mental duress, and tangible harm to a Plaintiff's cellular device establishes Article

16

III standing to pursue TCPA claims. *Williams v. Myler Disability, LLC*, No. 3:20-cv-00275-FDW-DCK (W.D.N.C. Nov. 12, 2020). More recently, a Western District of North Carolina court confirmed that the Fourth Circuit generally assumes the TCPA extends to wireless telephone numbers, and denied a motion to dismiss TCPA § 227(c) and § 64.1200(d) counts on a cellular number. *Newman v. SGMS, Inc. and DeMayo Law Offices, LLP*, No. 3:25-CV-00042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025). Plaintiff's allegations here go well beyond asserting bare statutory violations and establish all elements of Article III standing: (1) actual, concrete, individual injury; (2) injury "fairly traceable to Defendant's challenged conduct" that Defendant is alleged to have committed; and (3) injury redressable by a favorable judicial decision.

68. This is not a case where Defendant inadvertently failed to process Plaintiff's opt-out request. Defendant received two (2) explicit, clear, unequivocal and unambiguous written revocations, yet Defendant attempted to circumvent Plaintiff's right to revoke consent through plain language, a right afforded to him and all consumers under the updated TCPA rules effective April 11, 2025.

69. Defendant then continued to send or caused to be sent nineteen (19) commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 over a period of one hundred five (105) days, each constituting a separate and independent violation of the TCPA and the SCTPPA, employing increasingly personalized and deceptive tactics, thereby demonstrating a habitual and willful disregard of Plaintiff's rights under both the TCPA and the SCTPPA.

70. Plaintiff has suffered harm and damages at the hands of the Defendant, as this harm is precisely the type of harm that the TCPA and the SCTPPA were enacted to prevent and protect against.

## V.     FIRST CAUSE OF ACTION

### Robin Anthony, d/b/a Renu Herbs

### 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(a)

71. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

72. The TCPA and FCC provide that a consumer who has given prior express consent to receive text messages may revoke that consent at any time through any reasonable means. Once that consent is revoked, the sender must immediately cease sending text messages to the consumer.

73. On or about February 9, 2026, Plaintiff revoked any and all prior express consent to receive text messages from Defendant by replying directly to Defendant's text message: "I don't wanna receive any further texts from your company." This reply was sent through the same channel Defendant used to send its commercial/promotional text messages, constituting revocation by a reasonable means.

74. On February 16, 2026, Plaintiff again revoked consent through the same channel, stating: "i don't wanna receive any further texts from your company leave me alone." This constituted a second, independent revocation of consent.

75. In spite of Plaintiff's clear revocations of consent, Defendant sent the following nineteen (19) commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764, each constituting a separate and independent violation:

18

76. February 16, 2026, a promotional text message advertising Defendant's products with a website link, seven (7) days after Plaintiff sent his first revocation of consent;

77. February 17, 2026, a promotional text message advertising Defendant's products with a website link, eight (8) days after Plaintiff sent his first revocation of consent;

78. February 21, 2026, a text message promoting a live commercial broadcast on Instagram and Facebook with links to both platforms, twelve (12) days after Plaintiff sent his first revocation of consent;

79. February 24, 2026, a promotional text message advertising Defendant's products by name with a direct link to Defendant's online commercial retail business website, fifteen (15) days after Plaintiff sent his first revocation of consent;

80. February 28, 2026, a text message promoting a live Instagram broadcast featuring a limited-time discount on Defendant's products with an Instagram link, nineteen (19) days after Plaintiff sent his first revocation of consent;

81. March 7, 2026, a text message promoting a live Instagram broadcast featuring limited-time deals with an Instagram link, twenty-six (26) days after Plaintiff sent his first revocation of consent;

82. March 10, 2026, a promotional text message advertising Defendant's products with a 15% discount and free shipping offer with a direct link to Defendant's online commercial retail business website, twenty-nine (29) days after Plaintiff sent his first revocation of consent;

83. March 13, 2026, a promotional text message advertising a specific product at 20% off for 24 hours, including a promotional discount code and a direct link to Defendant's online commercial retail business website with the product name embedded in the URL, thirty-two (32) days after Plaintiff sent his first revocation of consent;

19

84. March 18, 2026, a commercial/promotional text message advertising Robin's Birthday Sale with 15% off sitewide and a code to use and a direct link to Defendant's online commercial retail business website, thirty-seven (37) days after Plaintiff sent his first revocation of consent;

85. March 21, 2026, a commercial/promotional text message promoting a live Instagram broadcast, inviting Plaintiff to ask questions, and advertising a special discount, including a direct link to Defendant's Instagram page, forty (40) days after Plaintiff sent his first revocation of consent;

86. March 22, 2026, a commercial/promotional text message advertising Robin's Birthday Sale with promotional discount code BIRTHDAY15! stating the sale ends tonight with no second chance, forty-one (41) days after Plaintiff sent his first revocation of consent;

87. March 25, 2026, a commercial/promotional text message sent at 5:17 AM before the legally permissible 8:00 AM time under 47 C.F.R. § 64.1200(c)(1) advertising two of Defendant's products by name and including a direct link to Defendant's online commercial retail business website, forty-four (44) days after Plaintiff sent his first revocation of consent;

88. April 3, 2026, a commercial/promotional text message advertising an Easter Sale offering 15% off multiple products by name including the Kidney Package, Detox Trio/Brazil Bags, and Drop Slim with promotional discount code EASTER15 and a direct link to Defendant's online commercial retail business website, fifty-three (53) days after Plaintiff sent his first revocation of consent;

89. April 5, 2026, a commercial/promotional text message advertising a Last Call Easter Sale offering 15% off multiple products by name including the Detox Trio, Brazil Bags, Kidney

Package, and Drop Slim with promotional discount code EASTER15 and a direct link to Defendant's online commercial retail business website, fifty-five (55) days after Plaintiff sent his first revocation of consent;

90. April 11, 2026, a commercial/promotional text message promoting a Flash Sale offering 25% off two specific products by name Brazil Tea and Drop Slim for a 24 hour period, with promotional discount code TEA25 and a direct link to Defendant's online commercial retail business website, sixty-one (61) days after Plaintiff sent his first revocation of consent;

91. April 29, 2026, a commercial/promotional text message disguised as a personal communication with the greeting "Hey stranger!" promoting a 5% discount with promotional code R8MN4R and a direct link to Defendant's online commercial retail business website, seventy-nine (79) days after Plaintiff sent his first revocation of consent;

92. May 4, 2026, a commercial/promotional text message addressing Plaintiff by his first name and referencing a prior promotional code promoting a fresh arrival of products with a 5% discount valid only for the next 48 hours and a direct link to Defendant's online commercial retail business website, eighty- four (84) days after Plaintiff sent his first revocation of consent;

93. May 8, 2026, a commercial/promotional text message promoting a Mother's Day Sale with promotional discount code 15MOTHER and direct links to two of Defendant's online commercial retail business websites: renuherbs.com and dropslim.com, eighty-eight (88) days after Plaintiff sent his first revocation of consent;

94. May 25, 2026, a commercial/promotional text message promoting a Memorial Day Sale offering 20% off selected products with promotional discount code MEM20 and a

shortened link to Defendant's online commercial retail business website. This message was sent from a different telephone number 8557711275 not previously used by Defendant in spite of Plaintiff's revocations of consent communicated to Defendant's prior number 8774522026, one hundred five (105) days after Plaintiff sent his first revocation of consent.

95. On May 25, 2026, one hundred five (105) days after Plaintiff's initial revocation, Defendant sent or caused to be sent a commercial/promotional text message to Plaintiff's cellular telephone number ending in 6764 from a different telephone number, 8557711275, not previously used by Defendant to contact Plaintiff. The switch to a new telephone number, after receiving two clear and explicit revocations of consent and sending eighteen (18) prior violations, is consistent with a deliberate attempt to circumvent Plaintiff's opt-out and evade accountability. The May 25, 2026 text message also included a shortened website link or shortened URL: https://klo4.io/JnEJbk instead of www.renuherbs.com hiding the destination of the link, which constitutes a deceptive practice. The use of a different telephone number does not extinguish or otherwise limit the legal effect of Plaintiff's prior revocations, on February 09, 2026 and again on February 16, 2026, which were directed at Defendant as the sender and not at any particular telephone number.

96. Each of the foregoing text messages was commercial in nature, promoting Defendant's products, sales, discounts, or live commercial events for the purpose of driving consumer purchases.

97. Each text message Defendant sent or caused to be sent after Plaintiff's revocation of consent constitutes a separate and independent violation of the TCPA and FCC regulations.

98. Defendant's violations were knowing and willful within the meaning of 47 U.S.C. § 227(b)(3)(C). Defendant received two (2) direct, unambiguous and explicit revocations of

consent from Plaintiff on February 09, 2026 and February 16, 2026 yet continued sending commercial/promotional text messages over a period of one hundred five (105) days without honoring Plaintiff's revocations. A defendant acts willfully under the TCPA when its actions demonstrate "indifference to ongoing violations and a conscious disregard for compliance with the law." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 662 (4th Cir. 2019). Courts in this Circuit have found willfulness where a plaintiff requested that a defendant stop contacting them and was nevertheless sent additional telemarketing messages. Here, Plaintiff made two such explicit requests and received nineteen (19) additional commercial/promotional text messages over 105 days in direct response. Defendant's subsequent use of a different telephone number 8557711275 on May 25, 2026, after eighteen (18) prior violations, further evidences a deliberate attempt to circumvent Plaintiff's opt out rather than a good faith effort to comply. Furthermore, Defendant's use of a shortened website link or shortened URL in the May 25, 2026 text message constitutes a deceptive practice further demonstrating willful disregard for Plaintiff's rights. Defendant had reason to know and should have known that its conduct violated the TCPA and the SCTPPA because Plaintiff communicated two clear, explicit and unambiguous revocations of consent directly to Defendant. Defendant's own Terms of Service acknowledge the right to opt out and Defendant's continued sending of nineteen (19) commercial/promotional text messages over one hundred five (105) days including switching phone numbers and using shortened URLs demonstrates knowing and willful disregard for Plaintiff's rights and Defendant's statutory obligations.

99. As a result of Defendant's knowing and willful violations, Plaintiff is entitled to statutory damages of $500 per violation pursuant to 47 U.S.C. § 227(b)(3)(B), and treble damages

of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3)(C), for a total of between $9,500 and $28,500.

## VI.    SECOND CAUSE OF ACTION

### Robin Anthony, d/b/a Renu Herbs

### 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200(d)(3)

100. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

101. Once a consumer revokes consent to receive text messages, the TCPA and FCC regulations require the sender to honor that revocation promptly and cease sending text messages to that consumer. The FCC has held that revocation must be honored within a reasonable time not to exceed ten (10) business days of receipt. The FCC confirmed this requirement in its updated rules effective April 11, 2025.

102. Plaintiff's opt-out requests on February 09, 2026 and February 16, 2026 were sent directly to Defendant via the same text messaging channel through which Defendant sent its promotional messages to Plaintiff's cellular telephone number ending in 6764, constituting opt-out requests by a reasonable means.

103. Ten (10) business days following Plaintiff's initial revocation on February 09, 2026 elapsed no later than February 23, 2026, the deadline under both the FCC's general revocation framework and the amended 47 C.F.R. § 64.1200(d)(3), effective April 11, 2025. Defendant continued sending commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 on February 24, 2026, February 28, 2026, March 7, 2026, March 10, 2026, March 13, 2026, March 18, 2026, March 21, 2026, March 22, 2026, March 25, 2026, April 3, 2026, April 5, 2026, April 11, 2026, April 29, 2026, May 4, 2026, May 8, 2026 and May 25, 2026 all after the deadline date.

24

104. Defendant failed to honor Plaintiff's opt-out requests within ten (10) business days, or at all, sending a total of sixteen (16) additional commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764 after the expiration of the opt-out window.

105. Each such text message constitutes an independent violation of 47 C.F.R. § 64.1200(d)(3), as amended effective April 11, 2025.

## VII.    THIRD CAUSE OF ACTION

### Robin Anthony, d/b/a Renu Herbs

### 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)

106. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

107. Section 227(c)(5) of the TCPA provides a private right of action to any person who has received more than one telephone solicitation within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection. Plaintiff received nineteen (19) such solicitations within a single twelve (12) month period, exceeding the statutory threshold.

108. The Fourth Circuit has expressly recognized a private right of action for violations of internal do-not-call list regulations under § 227(c)(5). See *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). As the Fourth Circuit clearly stated in Krakauer: "The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." Id. at 649-50.

109. A Federal Court within the Fourth Circuit has further held that text messages are actionable under § 227(c)(5), that cellular telephone numbers qualify as residential

25

numbers for purposes of § 227(c), and that internal do-not-call list violations carry a private right of action, rejecting each of the arguments a defendant in this stage of the case would be expected to raise. See *Hudson v. Palm Beach Tan, Inc.,* No. 1:23CV486(WO)(JEP), 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024), report and recommendation adopted, No. 1:23-cv-486, 2024 WL 4188310 (M.D.N.C. Sept. 13, 2024).

110. Most recently, the Western District of North Carolina denied a motion to dismiss § 227(c)(5) and § 64.1200(d) counts brought on a cellular telephone number, holding that recent District Court decisions in the Fourth Circuit generally assume the TCPA extends to wireless telephone numbers. *Newman v. SGMS, Inc. and DeMayo Law Offices, LLP*, No. 3:25-CV-00042-KDB-SCR, 2025 WL 2524131 (W.D.N.C. Sept. 2, 2025) ("Finding this recent majority persuasive, the Court will assume... that Mr. Newman's Cell Number is residential under the facts alleged.").

111. To the extent any court has questioned whether § 227(c)(5) applies to text messages, those decisions are confined to circuits outside the Fourth Circuit and are not binding precedent in this District. See *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024); *McGonigle v. Dickey's Barbecue Restaurants, Inc.,* No. 1:25-cv-01062 (E.D. Va. July 22, 2026).

112. Section 227(c) and 47 C.F.R. § 64.1200(d) require persons engaged in telephone solicitations to: (a) maintain a written company-specific do-not-call policy; (b) train personnel on that policy; and (c) honor do-not-call requests within ten (10) business days of receipt. 47 C.F.R. § 64.1200(d)(3) as amended effective April 11, 2025.

113. Plaintiff's text message replies on February 9, 2026 and February 16, 2026 constituted requests to be placed on Defendant's company-specific internal do-not-call list within the

26

meaning of 47 C.F.R. § 64.1200(d)(3). Both requests were sent through the same channel Defendant used to deliver its commercial/promotional solicitations.

114. Defendant failed to honor Plaintiff's do-not-call requests within ten (10) business days as required by 47 C.F.R. § 64.1200(d)(3). The ten business day compliance window following Plaintiff's February 9, 2026 revocation request expired no later than February 23, 2026. Defendant sent commercial/promotional text messages to Plaintiff on February 24, 2026, February 28, 2026, March 7, 2026, March 10, 2026, March 13, 2026, March 18, 2026, March 21, 2026, March 22, 2026, March 25, 2026, April 3, 2026, April 5, 2026, April 11, 2026, April 29, 2026, May 4, 2026, May 8, 2026 and May 25, 2026 all of which occurred after the February 23, 2026 deadline.

115. Upon information and belief, Defendant failed to maintain a written internal do-not-call policy as required by 47 C.F.R. § 64.1200(d)(1), and/or failed to adequately train its personnel on honoring consumer do-not-call requests as required by 47 C.F.R. § 64.1200(d)(2). Defendant's failure to honor two (2) explicit do-not-call requests over one hundred five (105) days is consistent with the absence of any functional internal do-not-call compliance program.

116. A private right of action exists for violations of 47 C.F.R. § 64.1200(d) pursuant to 47 U.S.C. § 227(c)(5), which entitles Plaintiff to statutory damages of $500 per violation, trebled to $1,500 for knowing and willful violations. The Fourth Circuit has squarely recognized this private right of action. See *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019); *Hudson v. Palm Beach Tan, Inc.*, No. 1:23CV486(WO)(JEP), 2024 WL 4190513 (M.D.N.C. Aug. 12, 2024).

117. Defendant's violations of 47 C.F.R. § 64.1200(d) were knowing and willful. Defendant received two direct, explicit and unambiguous do-not-call requests from Plaintiff and continued to send commercial/promotional solicitations over a period of one hundred five (105) days, demonstrating a conscious disregard for Plaintiff's rights and Defendant's own regulatory obligations. Defendant's use of a different telephone number on May 25, 2026 after eighteen (18) prior violations is consistent with a deliberate attempt to circumvent Plaintiff's opt-out, further establishing the willful nature of Defendant's conduct.

118. As a result of Defendant's violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d), Plaintiff is entitled to statutory damages of $500 per violation, and up to $1,500 per violation for knowing and willful violations, for each text message Defendant sent to Plaintiff's cellular telephone number ending in 6764 in violation of Defendant's internal do-not-call obligations.

### VIII.   FOURTH CAUSE OF ACTION

**Robin Anthony, d/b/a Renu Herbs**

**47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(1)**

119. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

120. The FCC's rules state that no person or entity may send a commercial/promotional telephone solicitation to a residential telephone subscriber before 8:00 AM or after 9:00 PM local time at the called party's location. 47 C.F.R. § 64.1200(c)(1). This applies to commercial/promotional text messages sent to wireless telephone numbers used for residential purposes. 47 C.F.R. § 64.1200(e).

121. On March 25, 2026, Defendant sent or caused to be sent a commercial/promotional text message to Plaintiff's cellular telephone number ending in 6764 at 5:17 AM, a time

28

confirmed by the timestamp displayed on Plaintiff's cellular telephone at the time of receipt. The text message advertised two of Defendant's supplement products by name and included a direct link to Defendant's online commercial retail business website for the purpose of encouraging product purchases.

122. The March 25, 2026 text message was sent two hours and forty three minutes before 8:00 AM, the earliest time permitted for telephone solicitations under 47 C.F.R. § 64.1200(c)(1). The sending of this commercial solicitation during prohibited quiet hours constitutes an independent and separate violation of the TCPA, and is completely separate from Defendant's ongoing failure to honor Plaintiff's revocation of consent.

123. The 5:17 AM timestamp on the March 25, 2026 text message reflects local time at Plaintiff's location, confirming it fell within the prohibited quiet hours period.

124. Defendant's sending of a commercial/promotional text message solicitation to Plaintiff's cellular telephone number ending in 6764 at 5:17 AM was knowing and willful. Whether sent directly by Defendant or by a third-party vendor, platform, or marketing service acting on Defendant's behalf and at Defendant's direction, Defendant is fully responsible for the sending, timing and content of that text message.

125. Defendant programmed, scheduled, or authorized the sending of this text message during the prohibited hours, demonstrating a conscious disregard for the TCPA's quiet hours protections and Plaintiff's right to be free from illegal telemarketing solicitations.

126. The foreseeable consequence of sending a commercial/promotional text message solicitation at 5:17 AM is precisely the harm Plaintiff suffered: being woken up from his sleep, experiencing physical distress, heart beating faster than normal, frustration, anger

and suffering emotional harm upon discovering the intrusion was a commercial/promotional advertisement.

127. Plaintiff has received nineteen (19) telephone solicitations from Defendant within a twelve (12) month period, all in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5) including the quiet hours restriction of 47 C.F.R. § 64.1200(c)(1), the internal do-not-call obligations of 47 C.F.R. § 64.1200(d)(3). The March 25, 2026 quiet hours violation constitutes an independent, separate violation of 47 C.F.R. § 64.1200(c)(1) for which Plaintiff is entitled to statutory damages of $500, trebled to $1,500 for knowing and willful violations.

128. As a result of Defendant's violations of both 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(1), Plaintiff is entitled to statutory damages of $500, and up to $1,500 for knowing and willful violations, for the March 25, 2026 quiet hours violation.

## IX.    FIFTH CAUSE OF ACTION

### Robin Anthony, d/b/a Renu Herbs

### S.C. Code Ann. § 37-21-70(A)

129. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

130. S.C. Code Ann. § 37-21-70(A) prohibits any person from initiating, or causing to be initiated, a telephone solicitation directed to a telephone number when a person at that telephone number previously stated a desire not to be contacted again by or on behalf of the person on whose behalf the telephone solicitation is being made.

131. Plaintiff is a lifelong resident of the State of South Carolina. Each text message sent by Defendant or caused to be sent by Defendant, to Plaintiff's cellular telephone number ending in 6764 after Plaintiff's revocation of consent constituted a telephone solicitation

30

directed to a natural person's residence in the State within the meaning of S.C. Code Ann. § 37-21-20(6).

132. On February 09, 2026, Plaintiff stated a clear, explicit and unambiguous desire not to be contacted again by or on behalf of Defendant by replying directly to Defendant's text message with: "I don't wanna receive any further texts from your company." This statement was made to the telephone solicitor and to the person on whose behalf the telephone solicitation was being made, satisfying the requirements of S.C. Code Ann. § 37-21-70(A).

133. On February 16, 2026, Plaintiff once again stated a clear, explicit and unambiguous desire not to be contacted again by replying directly to Defendant's text message with: "i don't wanna receive any further texts from your company leave me alone." This constituted a second, independent statement of desire not to be contacted. Again, this statement was made to the telephone solicitor and to the person on whose behalf the telephone solicitation was being made, satisfying the requirements of S.C. Code Ann. § 37-21-70(A).

134. In spite of Plaintiff's clear statements of desire not to be contacted, Defendant initiated or caused to be initiated nineteen (19) telephone solicitations directly to Plaintiff's cellular telephone number ending in 6764 after Plaintiff's February 09, 2026 direct revocation statement to Defendant. Defendant initiated or caused to be initiated those nineteen (19) telephone solicitations to Plaintiff's cellular telephone number ending in 6764 on the following dates: February 16, 2026, February 17, 2026, February 21, 2026, February 24, 2026, February 28, 2026, March 7, 2026, March 10, 2026, March 13, 2026, March 18, 2026, March 21, 2026, March 22, 2026, March 25, 2026, April 3, 2026, April 5, 2026, April 11, 2026, April 29, 2026, May 4, 2026, May 8, 2026 and May 25, 2026. Each constitutes an independent violation of S.C. Code Ann. § 37-21-70(A).

135. Under S.C. Code Ann. § 37-21-70(A), any request not to receive telephone solicitations must be honored for at least five (5) years from the time the request is made. Defendant's failure to honor Plaintiff's February 09, 2026 request, and its continued sending of nineteen (19) commercial/promotional text messages over one hundred five (105) days constitutes a willful and ongoing violation of this provision.

136. Defendant's violations of S.C. Code Ann. § 37-21-70(A) were willful. Defendant received two clear, explicit and unambiguous statements of desire not to be contacted and continued sending commercial/promotional text messages over a period of one hundred five (105) days without honoring Plaintiff's stated desire not to be contacted, which demonstrates a conscious disregard for Plaintiff's rights under the SCTPPA. Defendant's subsequent switch to a different telephone number on May 25, 2026 further demonstrates willful disregard for Plaintiff's rights under both the TCPA and the SCTPPA.

137. Pursuant to S.C. Code Ann. § 37-21-80(A), Plaintiff is entitled to recover actual losses in addition to statutory damages of one thousand dollars ($1,000) for each violation. In addition, pursuant to S.C. Code Ann. § 37-21-80(B), because Defendant's violations were willful, the Court may increase the award to an amount not exceeding five thousand dollars ($5,000) for each violation. Defendant sent nineteen (19) telephone solicitations to Plaintiff in violation of S.C. Code Ann. § 37-21-70(A), entitling Plaintiff to statutory damages of one thousand dollars ($1,000) per violation for a minimum total of nineteen thousand dollars ($19,000) and up to five thousand dollars ($5,000) per violation for willful violations for a maximum total of ninety five thousand dollars ($95,000).

## X.     SIXTH CAUSE OF ACTION

### Robin Anthony, d/b/a Renu Herbs

### S.C. Code Ann. § 37-21-30

138. Plaintiff re-alleges and reincorporates all previous paragraphs as if fully set out herein.

139. S.C. Code Ann. § 37-21-30 prohibits any telephone solicitor from initiating, or causing to be initiated, a telephone solicitation at any time other than between 8:00 a.m. and 9:00 p.m. local time at the consumer's location, unless the telephone solicitor has obtained the prior written consent of the consumer.

140. On March 25, 2026, Defendant sent or caused to be sent a telephone solicitation directed to Plaintiff's cellular telephone number ending in 6764 at 5:17 AM, a time confirmed by the timestamp displayed on Plaintiff's cellular telephone at the time of receipt. At 5:17 AM, Plaintiff was located at his South Carolina residence. The local time at Plaintiff's location was 5:17 AM Eastern, which is two hours and forty three minutes before 8:00 AM, the earliest time permitted for telephone solicitations under S.C. Code Ann. § 37-21-30.

141. Defendant did not obtain Plaintiff's prior written consent to send telephone solicitations to Plaintiff's cellular telephone number ending in 6764 before 8:00 a.m. or after 9:00 p.m. as required by S.C. Code Ann. § 37-21-30. To the contrary, Plaintiff had explicitly, clearly and unambiguously revoked all consent to receive any text messages from Defendant on February 09, 2026, which was more than six (6) weeks before the March 25, 2026 quiet hours violation.

142. Defendant's violation of S.C. Code Ann. § 37-21-30 was willful. Defendant programmed, scheduled, or authorized the sending of a commercial/promotional text message solicitation at 5:17 AM to Plaintiff's cellular telephone number ending in 6764,

33

demonstrating a conscious disregard for the SCTPPA's quiet hours protections and Plaintiff's right to be free from commercial/promotional solicitations before 8:00 AM, the earliest time permitted for telephone solicitations under S.C. Code Ann. § 37-21-30.

143. Whether sent directly by Defendant or by a third-party vendor, platform, or marketing service acting on Defendant's behalf and at Defendant's direction, Defendant is fully responsible for the sending, timing and content contained therein.

144. Pursuant to S.C. Code Ann. § 37-21-80(A), Plaintiff is entitled to recover actual losses in addition to statutory damages of one thousand dollars ($1,000) for the March 25, 2026 quiet hours violation. Pursuant to S.C. Code Ann. § 37-21-80(B), because Defendant's violation was willful, the Court may increase the award to an amount not exceeding five thousand dollars ($5,000). Plaintiff is entitled to statutory damages of one thousand dollars ($1,000) and up to five thousand dollars ($5,000) for Defendant's willful sending of a commercial/promotional solicitation at 5:17 AM in violation of S.C. Code Ann. § 37-21-30.

## XI.    JURY DEMAND AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests a jury trial and requests that judgment be entered in favor of Plaintiff and against Defendant and prays for the following relief:

A. Declare that Defendant's conduct described herein constitutes knowing and willful violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., and knowing and willful violations of the South Carolina Telephone Privacy Protection Act, S.C. Code Ann. § 37-21-10 et seq.

B. Award Plaintiff statutory damages of $500 per violation pursuant to 47 U.S.C. § 227(b)(3)(B) for each of the nineteen (19) violations alleged in the First Cause Of Action,

34

and for each of the sixteen (16) post-deadline violations alleged in the Second Cause Of Action, each providing an independent statutory basis for recovery;

C. Award Plaintiff treble damages of up to $1,500 per violation pursuant to 47 U.S.C. § 227(b)(3)(C) for each knowing and willful violation alleged in the First Cause Of Action and in the Second Cause Of Action, each providing an independent statutory basis for recovery;

D. Award Plaintiff statutory damages of $500 per violation pursuant to 47 U.S.C. § 227(c)(5)(B) for each violation of Defendant's internal do-not-call obligations alleged in the Third Cause Of Action;

E. Award Plaintiff treble damages of up to $1,500 per violation pursuant to 47 U.S.C. § 227(c)(5)(C) for each knowing and willful violation alleged in the Third Cause Of Action;

F. Award Plaintiff statutory damages of $500 pursuant to 47 U.S.C. § 227(c)(5)(B) for the quiet hours violation alleged in the Fourth Cause Of Action, and up to $1,500 pursuant to 47 U.S.C. § 227(c)(5)(C) for the knowing and willful nature of that violation;

G. Issue a permanent injunction pursuant to 47 U.S.C. § 227(c)(5)(A) prohibiting Defendant from sending further commercial/promotional text messages to Plaintiff's cellular telephone number ending in 6764, including during prohibited quiet hours;

H. Award Plaintiff statutory damages of $1,000 per violation pursuant to S.C. Code Ann. § 37-21-80(A) for each of the nineteen (19) telephone solicitations transmitted to Plaintiff in violation of S.C. Code Ann. § 37-21-70(A) as alleged in the Fifth Cause Of Action, and up to $5,000 per violation pursuant to S.C. Code Ann. § 37-21-80(B) for the willful nature of each such violation, for a minimum of $19,000 and a maximum total of $95,000;

I. Award Plaintiff statutory damages of $1,000 pursuant to S.C. Code Ann. § 37-21-80(A) for the quiet hours violation alleged in the Sixth Cause Of Action, and up to $5,000 pursuant to S.C. Code Ann. § 37-21-80(B) for the willful nature of that violation; and

J. Award Plaintiff costs of this civil action; and

K. Grant such other and further relief as this Court deems just and proper.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take immediate affirmative steps to preserve all records, electronically stored information, transmission logs, campaign reports, consent records, opt-out records, customer relationship data, vendor communications, outbound message records, inbound message records, and all other documents or data relating to the text messages, telemarketing practices, and opt-out processing procedures alleged herein, including all records relating to telephone numbers 8774522026 and 8557711275. This demand is made from the date Defendant receives a copy of this Complaint and applies to all formats, whether paper, electronic, or otherwise.

Respectfully submitted:

_Mitito Twitty_ Date: 07/30/2026

Mitito Twitty (Pro se Plaintiff)

315 E Dunlap St.

Lancaster, SC 29720

980-313-6764 (telephone)

YBNORML36@GMAIL.COM (email)